UNITED STATES of America, Plaintiff–Appellee,

v.

**Theodore LINN, Defendant–Appellant.**

UNITED STATES of America, Plaintiff–Appellee,

v.

**Philip STURLIN, Defendant–Appellant.**

UNITED STATES of America, Plaintiff–Appellee,

v.

**Guy STURLIN, Defendant–Appellant.**

**Nos. 93–8044, 93–8045 and 93–8048.**

United States Court of Appeals, Tenth Circuit.

Aug. 1, 1994.

Patrick J. Crank, Asst. U.S. Atty. (David D. Freudenthal, U.S. Atty., Christopher A. Crofts and David A. Kubichek, Asst. U.S. Attys., with him on the brief), Casper, WY, for plaintiff-appellee.

Terry W. Mackey, Cheyenne, WY, for defendant-appellant Guy Sturlin.

Richard Wolf, Wolf & Tiedeken, Cheyenne, WY, for defendant-appellant Philip Sturlin.

Maynard D. Grant, Grant & Newcomb, Cheyenne, WY, for defendant-appellant Theodore Linn.

Before EBEL, KELLY and BARRETT, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendants-appellants Guy Sturlin and Theodore Linn appeal from their convictions and sentences for (1) conspiracy to commit certain offenses against the United States, 18 U.S.C. § 371; (2) mail fraud, 18 U.S.C. § 1341; (3) wire fraud, 18 U.S.C. § 1343; and (4) money laundering, 18 U.S.C. § 1956(a)(1). Defendant Philip Sturlin appeals only from his convictions for conspiracy, 18 U.S.C. § 371, arson, 18 U.S.C. §§ 844(i) & 2, and wire fraud, 18 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291 & 18 U.S.C. § 3742.

*Background*

On February 16, 1990, the Coffee Cup Cafe located in Cheyenne, Wyoming was destroyed by fire later determined to be the result of arson. During the latter part of 1989, the Cafe, owned by Guy Sturlin and operated by his son Philip Sturlin, was steadily losing money. A cooperating witness, Jim Kerns, testified that he and Philip Sturlin set the fire to collect insurance proceeds, approximately ten percent of which would be paid to Mr. Kerns for his efforts.

Guy Sturlin had contacted Theodore Linn, a former employee, in late 1989. Mr. Linn suggested the services of Mr. Kerns, also a former employee, who had been previously convicted for arson. In January 1990, Mr. Linn contacted Mr. Kerns regarding the possibilities of torching the Coffee Cup Cafe. Mr. Kerns was then contacted by Guy Sturlin and plans were made to destroy the Cafe the next month.

Mr. Kerns arrived in Cheyenne on February 15, 1990, and met Philip Sturlin at the Cafe. Mr. Kerns confirmed that Philip understood why he had come to Cheyenne. The next day he purchased Coleman fuel and lighter fluid for the fire. Mr. Kerns also purchased a police and fire band radio receiver to monitor the emergency channels after the fire started. Before starting the fire, Mr. Kerns and Philip Sturlin removed vari-

ous items from the cafe including the ledger, cash, receipts, some food products, knives and a mixer.

The fire was set by using the cafe's thermostat for a timer. Mr. Kerns had determined that the furnace would ignite approximately two hours after the thermostat was lowered ten degrees. Mr. Kerns and Philip Sturlin spread the Coleman fuel and lighter fluid in and around the furnace, lowered the thermostat by ten degrees, and left the Cafe at approximately 9:00 p.m. The empty fuel cans were left in an alley dumpster and they dropped off the cash, receipts and ledger at Guy Sturlin's house. After these tasks were completed, Mr. Kerns and Philip Sturlin went to a 10:00 p.m. movie at the local mall with a couple of Philip's friends to establish an alibi.

After the movie, Mr. Kerns turned on his monitor to ascertain whether the police or fire department had been dispatched to the cafe. Because all was quiet, the two returned to the vicinity of the cafe to investigate. Seeing no visible signs of a fire and worried that the employees would find the evidence of the attempted arson the next day, Mr. Kerns entered the cafe and found the premises filled with smoke. He immediately left, locking the door behind him, and returned to Philip Sturlin's car parked one block away. The police and fire department arrived and found the cafe completely engulfed in flame. Mr. Kerns and Philip Sturlin drove to Philip's house soon after the aid arrived. The fire department extinguished the blaze but the cafe was a total loss.

A police investigation into the fire ended with Mr. Kerns agreeing to testify against Mr. Linn and the Sturlins in exchange for reduced charges against himself. Mr. Kerns did testify against the three codefendants, resulting in convictions.

## Discussion

### I. Invalid Conviction Under Count One

Defendants[1] were charged in Count One of the indictment with conspiracy to commit various offenses against the United States. The district court instructed the jury that Count One charged Defendants "came to some type of agreement or understanding to commit offenses against the United States, namely, (a) to commit arson of a building affecting interstate commerce; (b) to engage in mail fraud; (c) to engage in wire fraud; (d) to engage in interstate travel to aid an illegal enterprise, *and* (e) to engage in money laundering...." III R., doc. 196 (Jury Instruction No. 16) (emphasis added). Defendants argue that their convictions under this count violated their Fifth and Sixth Amendment rights as well as Fed.R.Crim.P. 7(c).

The Fifth Amendment guarantees that the federal government will not deprive one of life, liberty, or property without due process of law. In the context of a criminal proceeding, among other safeguards to one's liberty interest, due process requires that guilt be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Defendants argue, for the first time on appeal, that their right to due process was violated because, given the general nature of the verdict on this count, it is impossible to know which, if any, object of the conspiracy the jury believed the government proved beyond a reasonable doubt. We review this challenge only for plain error. *See United States v. Hager*, 969 F.2d 883, 890 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992).

This argument has been foreclosed by the Supreme Court in *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). *Griffin* also involved a multiple-object conspiracy. There the Court held that " 'when [a conviction is based on] a jury verdict on an indictment charging several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged,' " *Griffin*, 502 U.S. at ——, 112 S.Ct. at 473 (quoting *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970)), provided none of the charges are legally defec-

---

**1.** We use the term "Defendants" to denote Theodore Linn, Guy Sturlin, and Philip Sturlin. When all do not take exception, we so note.

tive. *Id.* 502 U.S. at ———— ————, 112 S.Ct. at 470–472 (discussing *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) and *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)). Here, Count One of the indictment charged a multiple-object conspiracy in the conjunctive. Defendants do not argue that Count contained legally insufficient charges. Therefore, no Fifth Amendment violation occurred.

■ The Sixth Amendment guarantees a federal criminal defendant the right to a unanimous jury verdict. *Johnson v. Louisiana,* 406 U.S. 356, 369, 92 S.Ct. 1620, 1637, 32 L.Ed.2d 152 (1972) (Powell, J., concurring). Defendants argue, again for the first time on appeal, that this right was violated because it is impossible to know upon which, if any, object the jury agreed. Because defendants failed to object to the jury instructions below, we review only for plain error. *Hager,* 969 F.2d at 890.

" 'In this circuit, as in most others, "it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." ' " *United States v. Sasser,* 971 F.2d 470, 477 (10th Cir.1992) (quoting *United States v. Phillips,* 869 F.2d 1361, 1366 (10th Cir.1988) (quoting *United States v. McClure,* 734 F.2d 484, 494 (10th Cir.1984)), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993). Here, the district court properly instructed the jury that its verdict must be unanimous in order to convict Defendants. This general unanimity instruction coupled with the conjunctive characterization of Count One contained in Jury Instruction No. 16 forecloses any claim of plain error by defendants based on the Sixth Amendment. *See Sasser,* 971 F.2d at 477–78.

■ Finally, we turn to the issue of whether Count One violated Fed.R.Crim.P. 7(c). Again, because this issue is raised for the first time on appeal, we review only for plain error. *See Hager,* 969 F.2d at 890. Rule 7(c) provides that:

The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.... It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.

Here, Count One alleged a conspiracy to commit multiple offenses against the United States. Guy and Philip Sturlin argue that Count One violated Rule 7(c) because it is unclear. We find Count One to be a simple charge of conspiracy having multiple objects; no lack of clarity exists. Indeed, the enumeration of multiple objects is specifically sanctioned by Rule 7(c). Defendants' convictions on Count One, thus, withstand all challenges brought by this appeal.

## II. Exclusion of Criminal History of Jim Kerns

■ At trial, Defendants attempted to introduce prior convictions of Jim Kerns to discredit his testimony. The court excluded this evidence pursuant to Fed.R.Evid. 609(b). Defendants argue that such exclusion constituted an abuse of the court's discretion warranting a new trial. We review the exclusion of a witness' criminal record for abuse of discretion. *See United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1571 (10th Cir.1993).

■ Fed.R.Evid. 609(b) states:

Evidence of a conviction [for a felony] is not admissible if a period of more than ten years has elapsed since the date of the conviction ... unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Jim Kerns was convicted of grand larceny and possession of stolen property seventeen years prior to trial below. The court excluded evidence of these convictions, reasoning that it was prejudicial to the government's case and that it possessed little probative value given that they were more than fifteen years old. Defendants argue that the district court erred in considering prejudice to the government in its decision to exclude this evidence. Defendants point us to the case of *Green v. Bock Laundry Machine Co.,* 490

U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989), in which the Supreme Court held that a court must admit evidence of felony convictions of witnesses in civil trials regardless of any prejudice to the witness or the offering party. *Id.* at 527, 109 S.Ct. at 1994. The Court reasoned that "the Rule was meant to authorize a judge to weigh prejudice against no one other than a criminal defendant." *Id.* at 521, 109 S.Ct. at 1991.

Defendants in this case fail to recognize that *Green* addresses admissibility of evidence of prior felony convictions under Rule 609(a)(1), not 609(b). In 609(a)(1), the rule requires the judge to weigh prejudice against only the criminal defendant. There exists no such limitation in 609(b). That section simply instructs to judge to consider "prejudicial effect." Thus, the court did not abuse its discretion in considering the prejudicial effect of this evidence on the government's case. *See Rodriguez–Garcia,* 983 F.2d at 1571.

### III. Denial of Motions for Severance

■ All Defendants moved pretrial, during trial and post-trial for severance, arguing that a joint trial would unduly prejudice their rights to a fair trial. The court denied all of these motions. We review the court's denial of Defendants' severance motions for abuse of discretion. *Zafiro v. United States,* ——— U.S. ———, ———, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993).

■ Defendants' claim that their defenses are mutually antagonistic. In this circuit, the conflict between codefendants' defenses must be such that "the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Swingler,* 758 F.2d 477, 495 (10th Cir.1985). The Supreme Court further instructs us that

> Mutually antagonistic defenses are not prejudicial *per se.* Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.... When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

*Zafiro,* ——— U.S. at ———, 113 S.Ct. at 938 (citing *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987)).

Here, the mutual antagonism complained of by defendants amounts to no more than finger pointing. The Sturlins maintained that they had nothing to do with the fire at all and that Mr. Linn and others committed the arson as part of a scheme to coerce Guy Sturlin to invest money. Likewise, Mr. Linn contended that he had nothing to do with the fire and that the Sturlins and Mr. Kerns committed the arson. Of course, Defendants also posited that each had nothing to do with the fire and that it was either accidental or due to an unknown arsonist. These defenses simply are not so contradictory that the jury must have necessarily disbelieved one to believe another. The jury could have believed all of Defendants' theories and acquitted all of them, but, unfortunately for Defendants, did not.

Defendants also argue that evidence admissible against one Defendant and not admissible against the other two prejudiced their right to a fair trial in direct contravention of the concerns of the Supreme Court in *Zafiro. Zafiro,* ——— U.S. at ———, 113 S.Ct. at 938 ("Evidence that is probative of a defendant's guilt but technically admissible against a codefendant also might present a risk of prejudice."). That evidence consisted of a telephone conversation between Philip Sturlin and Mr. Kerns, the substance of which implicated all Defendants. Before that evidence was admitted, however, the court gave a limiting instruction explaining that this evidence could not be used as evidence of guilt concerning Guy Sturlin and Theodore Linn. Given this limiting instruction, the district court did not abuse its discretion.

Finally, Mr. Linn, relying on *Zafiro,* argues that he was prejudiced because he was less culpable than Guy Sturlin who stood to gain the most from the arson. *Zafiro* does instruct that differing degrees of culpability may warrant severance in a trial involving multiple defendants in the context of a complex case. *Id.* at ———, 113 S.Ct. at 938. Here, we have a simple conspiracy case involving a few actors and a straightforward set of events; complexity and confusion are not a concern. The concerns justifying sev-

erance based upon differing degrees of culpability are simply not present in this case.

## IV. Prosecutorial Misconduct

Defendants argue that various statements made by the prosecutor at trial constituted prosecutorial misconduct. Specifically, Defendants argue that the prosecutor (1) impermissibly vouched for the credibility of Mr. Kerns, (2) shifted the burden of proof to Defendants through comments made at oral argument, and (3) made personal attacks on defense counsel during closing argument. Because none of these objections were made at trial, we review only for plain error. *United States v. Wynne*, 993 F.2d 760, 766 (10th Cir.1993).

█ Upon review of the statements alleged to constitute vouching by the prosecution, we find no statement in which the government attorney injected his personal views as to the credibility of a witness. The prosecutor commented fairly on the evidence presented at trial during his closing argument and these comments did not impermissibly shift the burden of proof to the Defendants. Lastly, the prosecutor's comments regarding defense counsel during closing argument, while being totally uncalled for, do not amount to plain error. *See United States v. Nichols*, 21 F.3d 1016, 1019 (10th Cir.1994). We are, however, compelled to note that comments by prosecutors to the effect that a defense attorney's job is to mislead the jury in order to garner an acquittal for his client is not only distasteful but borders on being unethical. *See* ABA Model Code of Prof. Resp. EC 7–10, 7–37. Such comments only serve to denigrate the legal profession in the eyes of the jury and, consequently, the public at large. The responsibility of both the prosecution and the defense is the same—to assist in the search for the truth. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir.1993) ("An attorney's duty a client can never outweigh his or her responsibility to see that our system of justice functions smoothly."). Suggestions to the contrary by either side should not be tolerated by either the trial judge or the bar.

## V. Juror's Health

█ During jury deliberations, a juror presented a doctor's note to the court stating that stressful situations presented a great health risk for that juror. Defendants unsuccessfully moved for a mistrial upon learning of this note. Defendants appeal from the denial of this motion, arguing that their right to be tried by a jury of twelve was denied when the juror in question continued deliberations. We review the court's denial of a motion for mistrial for abuse of discretion. *United States v. Peveto*, 881 F.2d 844, 859 (10th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

█ Once informed of the doctor's note, the court asked the juror in open court whether he felt he could continue deliberations. The juror responded affirmatively and the jury continued deliberations. Because the court did not force the juror to continue deliberations in the face of debilitating health conditions, *see United States v. Pleva*, 66 F.2d 529, 532 (2d Cir.1933), it did not abuse its discretion in denying Defendants' motion for mistrial.

## VI. *Allen* Charge

The Sturlins argue that the court erred in giving the jury an instruction regarding unanimity under *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Because the Sturlins object to the *Allen* charge only on the basis that it was coercive, we review for plain error. *United States v. Ellzey*, 936 F.2d 492, 500 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 400, 116 L.Ed.2d 350 (1991). The *Allen* charge given by the court was proper.

## VII. Double Jeopardy

The Sturlins also argue that their convictions for mail fraud, wire fraud and money laundering subjected them to double jeopardy in violation of their Fifth Amendment rights. This argument is without merit. *See United States v. Hollis*, 971 F.2d 1441, 1450–51 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993).

## VIII. Sentencing

### A. Theodore Linn

█ Mr. Linn challenges the district court's calculation of his criminal history cat-

egory on two grounds. First, he challenges the court's use of a 1970 conviction as being outside the fifteen-year window prescribed in U.S.S.G. § 4A1.2(e)(1). Mr. Linn raised an objection to the presentence report's (PSR) inclusion of this conviction during sentencing. The district court felt it inefficient to conduct a hearing on this issue and, instead, sentenced Mr. Linn as if the conviction did fall within the fifteen year window. Because Fed.R.Crim.P. 32 allows a defendant to object to a PSR at any time before sentence is imposed and the district court is required to resolve disputed issues of fact relating to sentencing, Fed.R.Crim.P. 32(c)(3)(D), it was error for the district court to impose sentence on Mr. Linn without conducting an appropriate hearing regarding this prior conviction. *See United States v. Stanberry,* 963 F.2d 1323, 1326 (10th Cir.1992).

■ Mr. Linn also contests the district court's failure to group two previous offenses for purposes of calculating his criminal history category. Specifically, Mr. Linn argues that these two convictions were related for purposes of U.S.S.G. § 4A1.2(a)(2) such that he should have received only three points for them and not the six points he actually received. Mr. Linn raises this argument for the first time on appeal and consequently our review is only for plain error, *United States v. Ballard,* 16 F.3d 1110, 1114 (10th Cir. 1994), and we find none. Even assuming the district court was in error in not grouping these two offenses, the district court had discretion to upwardly adjust this category if grouping the offenses would underrepresent the seriousness of the defendant's criminal history. U.S.S.G. § 4A1.2, comment. (n.3).

■ Mr. Linn also argues that the district court did not apply the proper offense level with regard to his money laundering conviction under 18 U.S.C. § 1956. More specifically, he argues that because the jury was instructed in the disjunctive with regard to Mr. Linn's possible offenses of either § 1956(a)(1)(A)(i) or § 1956(a)(1)(B)(i) we cannot not tell which offense constituted his offense of conviction, and that the district court was therefore unjustified in applying

the higher offense level of 23 under U.S.S.G. § 2S1.1 for violating § 1956(a)(1)(A)(i). Again, because this argument was not raised below we review only for plain error. *Ballard,* 16 F.3d at 1114.

Section 1956(a)(1)(A)(i) prohibits financial transactions made "with the intent to promote the *carrying on* of specified unlawful activity." (emphasis added). The Official Commentary to the attendant Sentencing Guideline states: "A higher base offense level is specified if the defendant is convicted under 18 U.S.C. § 1956(a)(1)(A) ... because *[that section] appl[ies] to defendants who encouraged or facilitated the commission of further crimes.*" U.S.S.G. § 2S1.1, comment. (backg'd) (emphasis added). Nowhere in the indictment or the record is there any evidence that Defendants had any intention to commit further crimes which might be promoted by their money laundering. Because the district court had no such evidence before it, it was clear error to sentence Mr. Linn under U.S.S.G. § 2S1.1(a)(1). *United States v. Moss,* 9 F.3d 543, 553 (6th Cir.1993). We remand for resentencing.

■ Finally Mr. Linn argues that the district court erred in failing to group his money laundering and wire fraud convictions in accordance with U.S.S.G. § 3D1.2(d). *United States v. Johnson,* 971 F.2d 562 (10th Cir.1992), forecloses this argument. In *Johnson,* the court held that money laundering and wire fraud should not be grouped under § 3D1.2(d) because the harm caused by each, as assessed under the Guidelines, is qualitatively distinct; money laundering requires assessment of individual impact while wire fraud requires assessment of societal harm. *Id.* at 576. Mr. Linn, nonetheless, attempts to factually distinguish *Johnson* because there the monetary difference in the harm between the two offenses was much greater than the monetary difference between the harm associated with his offenses of wire fraud and money laundering. This argument simply misses the point of *Johnson.* Qualitative and not quantitative differences dictate the separate grouping of money laundering and wire fraud offenses.

### B. Guy Sturlin

Mr. Sturlin makes the same arguments regarding his base offense level for money

laundering and the grouping of his money laundering and wire fraud offenses as Mr. Linn. For the reasons stated above, Mr. Sturlin must be resentenced with regard to his base offense level for money laundering. His remaining arguments are unpersuasive.

Mr. Sturlin also argues that because he was not convicted of the substantive arson count of the indictment it was error for the court to sentence him on the multiple-object conspiracy, which included arson, under the "conspiracy to commit arson" section of the Guidelines, U.S.S.G. §§ 2X1.1(a) (Conspiracy) & § 2K1.4(a)(2) (Arson). Because Mr. Sturlin was properly convicted of conspiracy to commit arson, given the conjunctive nature of the conspiracy count, the court properly sentenced him for conspiracy to commit arson.

Accordingly, the convictions are AFFIRMED as is the sentence of Philip Sturlin. We REMAND for resentencing of Mr. Linn and Guy Sturlin consistent with this opinion.