**UNITED STATES COURT OF APPEALS**
**Filed 7/10/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PERCY L. McCLENDON,

      Defendant-Appellant.

No. 95-3215
(D.C. No. 94-CR-10052-02)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK, Circuit Judge**, **McWILLIAMS, Senior Circuit Judge**, and **KELLY, Circuit Judge**.

In April, 1994, the Wichita Police Department received information from different sources that marijuana was being sold by a person residing at 1724 S. Battin, in Wichita, Kansas. The police determined that Timothy Keith Woodard, a Wichita fireman resided at an apartment at 1724 S. Battin, and a surveillance of the residence was established. On April 26, 1994, officers observed a red Honda, driven by a person who was later identified as Percy McClendon, stop at Woodard's residence. The driver entered

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

Woodard's apartment, shortly thereafter departed therefrom and then returned within a few minutes, entering the residence through a back door. At this point, the police officers decided to conduct a so-called "knock and talk" approach.

Officers knocked on the front door of 1724 S. Battin and Woodard answered the knock. The officers identified themselves and advised Woodard that they had received complaints about possible drug sales from his residence. Woodard assured the officers that such was not occurring, and further stated that he was a member of the Wichita Fire Department and had just gotten off work. The officers then asked if they could search the premises and satisfy themselves that the complaints were unfounded. At this point, according to the officers, Woodard turned around and walked out of the officers' sight toward the bathroom and bedroom area. Woodard soon returned to the officers, who, again, asked if they could "look around," to which Woodard replied, "You can come in and look around. I don't have anything to hide. I don't have anything here."

Upon entering the premises, the officers observed Percy McClendon, who was the person they had previously seen driving the red Honda and entering Woodard's apartment. A search of the premises disclosed a plate in the microwave oven which had chunks of cocaine base on it totaling 48 grams. Also, 59 grams of marijuana were found in a Crown Royal bag behind the stove in the kitchen. The marijuana was individually packaged in 15 small ziploc bags, all contained in one large bag.

The search of Woodard's residence also revealed a set of digital scales which were

later determined to have crack cocaine residue on them. Also, two pagers and approximately $460 were found in the wastebasket in the bathroom of the apartment. A cellular phone and another pager were found on top of the refrigerator. Other drug paraphernalia was also found, including hemostats, razor blades, baking soda and ziploc bags. A loaded Lorcin .25 caliber automatic handgun was discovered in a bedroom dresser drawer. Finally, a notebook containing names of various individuals with dollar amounts next to their names was seized.

In his post-arrest statement, McClendon stated to the officer that he had gone to Woodard's residence to buy marijuana. At Woodard's request, McClendon said that he took the plate with the crack cocaine and the scales with the residue on them from the bedroom to the kitchen where he put the plate into the microwave oven and placed the scales underneath the kitchen cabinet. McClendon then said he went to the bathroom where he put his two pagers and his cash money in a trash bag.

By indictment, Woodard and McClendon were charged with possessing with an intent to distribute 48 grams of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and with aiding and abetting in violation of 18 U.S.C. § 2. In Count 2 Woodard only was charged with possessing with an intent to distribute 59 grams of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2..

Prior to trial both Woodard and McClendon filed motions to sever their trials. Both motions were denied. A jury convicted Woodard on both counts and McClendon on

- 3 -

Count 1. McClendon was sentenced to 97 months imprisonment on Count 1. McClendon appeals.[1] We affirm.

On appeal, McClendon raises two issues: (1) the district court erred in admitting evidence of prior bad acts on the part of McClendon in violation of Fed. R. Evid. 404(b); and (2) the district court erred in denying the motion to sever his trial from Woodard's.

## BEL AIRE AFFAIR

The evidence of the prior "bad act" on the part of McClendon was that in January, 1994, some three months prior to McClendon's arrest on the present charges, McClendon had been stopped by the police in Bel Aire, Kansas. Jumping ahead, McClendon testified in his own behalf and in his direct testimony explained the circumstances relating to that incident. McClendon stated that he and a friend got "pulled over" in Bel Aire, Kansas, and the police took $126.10 from him. He said there was a "discussion" about a gun in the car. On further direct questioning by his counsel, McClendon stated that he was a passenger in the car, and that they had been stopped by the police for speeding. Counsel asked if McClendon had been "charged with anything out of the incident at Bel Aire". McClendon answered that he had been charged with possession of a "little bit" of marijuana and carrying a concealed weapon and that the charges were still pending.

[1] Woodard filed a separate appeal, our No. 95-3203, and his conviction is affirmed contemporaneously with the filing of the present order and judgment.

Prior to trial, counsel for McClendon filed a motion wherein she asked for an order directing the government to disclose "any prior conviction or other similar acts or other bad acts" on the part of McClendon, which the government intended to introduce into evidence at trial. By response, the government stated that if it decided to introduce in its case-in-chief evidence of prior convictions or bad acts committed by McClendon it would notify counsel of such. At pre-trial, however, the government indicated that it did not propose to introduce evidence of prior bad acts on the part of McClendon, if such "did exist." And, the government at trial did not introduce evidence of prior bad acts by McClendon.

The first time the term "Bel Aire" was heard by the jury was in cross-examination of a police officer by Woodard's counsel. Counsel asked the officer if, at the time of his arrest, McClendon had asked that the two pagers and $460 found in a wastebasket be returned to him. The officer testified that McClendon did so ask. The officer testified that he then told McClendon to have a seat in the living room and he would talk to him later about the matter. Counsel for Woodard then propounded the following question to the officer: "And Percy [McClendon] told you that he put them in the trash because he'd been stopped in Bel Aire before?" Counsel for McClendon objected to that question. The district court sustained the objection and instructed the jury to disregard the question. McClendon's counsel indicated that such was satisfactory to her.

Woodard testified on his own behalf at trial, and, on direct examination, counsel

questioned Woodard concerning events occurring in Woodard's apartment at the time he and McClendon were arrested. Specifically, in response to a question, Woodard testified that the officer asked McClendon whether he ever got stopped by a policeman or "did he have any records or whatever?" Counsel then asked: "What did Percy say?" to which objection was made. This objection was overruled and Woodard testified that McClendon told the officer that he "had a marijuana and concealed weapon charge on him." That apparently was the extent of Woodard's testimony on that particular matter.

The next reference to prior bad acts by McClendon occurred during the testimony of Vanessa Rolfe, one of McClendon's witnesses. When cross-examined by Woodard's counsel, she testified that McClendon had been "stopped before and the police took some money from him." Apparently, no objection was made to that particular testimony.

It would appear that the only other time that the jury heard anything about the so-called Bel Aire Affair was from McClendon himself. As indicated, on direct examination counsel elicited from McClendon some of the circumstances concerning his "stop" by the police in Bel Aire. McClendon did state that on that occasion the police took some money from him and that such was the reason he put the two pagers and $460 in currency in a trash bag in the bathroom in Woodard's apartment shortly before he was arrested.

When viewed in context, we hold that any possible error in admitting testimony concerning the "stop" at Bel Aire three months before McClendon's arrest in Woodard's apartment was, at most, harmless error. In *United States v. Sloan*, 65 F.d. 861, 865 (10th

Cir. 1993), *cert. denied* 116 S. Ct. 824 (1996), we said that where evidence of guilt is overwhelming, any error in mentioning a defendant's criminal record is harmless error, citing *United States v. Van Scoy*, 482 F.2d 347, 349 (10th Cir. 1973).

The government, as promised, did not present any evidence of prior bad acts by McClendon. Woodard in his direct testimony made very brief reference thereto in relating what transpired between the officers and McClendon at Woodard's apartment. And what detail there was concerning the "stop" in Bel Aire came from McClendon himself, on direct examination, and was apparently designed to explain why he threw the two pagers and $460 into a wastebasket in Woodard's apartment immediately before he was arrested. In his post-arrest statement McClendon stated that he was in Woodard's apartment to make a marijuana purchase and that he, at Woodard's request, took the plate with the crack cocaine on it from the bedroom and placed it in the microwave oven. In his testimony at trial, McClendon admitted that he, at Woodard's request, carried the plate on which there was what McClendon believed to be crack cocaine from the bedroom into the kitchen and that when he couldn't open the door to the microwave oven, Woodard "popped" the door and put the plate in the oven. It should be remembered that both Woodard and McClendon were charged with aiding and abetting the other. Certainly in trying to hide the cocaine in the microwave oven, McClendon, by his own testimony, was aiding and abetting. And, on appeal, McClendon does not challenge the sufficiency of the evidence to sustain his conviction.

MOTION TO SEVER

McClendon also argues that the district court erred in denying his motion to sever his trial from Woodard's. The denial of a motion to sever is reviewed by us for abuse of discretion. *United States v. Wacker,* 72 F.d. 1453 (10th Cir. 1995). In *Wacker* we said that a defendant in seeking a severance "bears the heavy burden of demonstrating prejudice to his case." *Id.* at 1468 (internal quotes omitted). Our study of the record leads us to conclude that there was no abuse of discretion in the instant case.

It would appear that in the district court the motion to sever was based primarily on *United States v. Bruton,* 391 U.S. 123 (1968). In *Bruton,* the Supreme Court held that the admission into evidence of a co-defendant's statement inculpating a defendant violates that defendant's Sixth Amendment right of confrontation when the defendant elects not to testify. *Id.* at 137. However, in the instant case, although the district court denied the motion to sever, it also ordered that Woodard's and McClendon's post-arrest statements be redacted so as to eliminate any reference by one concerning the other. Apparently this order was followed, thus avoiding any *Bruton* problem. [2] *See United States v. Chatman,* 994 F.2d 1510, 1513 (10th Cir. 1993), *cert. denied* 114 S. Ct. 230 (1993) (no violation of *Bruton* where the district court redacted the co-defendant's post-arrest statement and eliminated not only the defendant's name but any reference to his

---

[2] Moreover, in this case, both defendants testified, thereby eliminating the potential prejudice to each defendant that was the *Bruton* court's major concern. .

existence).

In this Court, counsel emphasizes *Bruton* less and instead relies primarily on the fact that, at trial, McClendon's defense was at odds with that of Woodard; i.e. each was "finger pointing" at the other. In this connection, we note that both McClendon and Woodard testified at trial, and each was cross-examined not only by government counsel, but also by counsel representing the other defendant.

In *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994), we rejected a so-called claim of "mutually antagonistic" defenses as a ground for a severance. In so doing, we spoke as follows:

> Here, the mutual antagonism complained of by defendants amounts to no more than finger pointing. The Sturlins maintained that they had nothing to do with the fire at all and that Mr. Linn and others committed the arson as part of a scheme to coerce Guy Sturlin to invest money. Likewise, Mr. Linn contended that he had nothing to do with the fire and that the Sturlins and Mr. Kerns committed the arson. Of course, Defendants also posited that each had nothing to do with the fire and that it was either accidental or due to an unknown arsonist. These defenses simply are not so contradictory that the jury must have necessarily disbelieved one to believe another. The jury could have believed all of Defendants' theories and acquitted all of them, but, unfortunately for Defendants, did not.

So, in the instant case, there was some "finger pointing," Woodard testifying that the crack cocaine was not his, and McClendon testifying that the crack cocaine did not belong to him. However, such, under *Linn, supra,* does not require a severance. The district court did not abuse its discretion.

Judgment affirmed.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge