**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 16 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SALVADOR ANCHIETA,

Defendant - Appellant.

No. 00-2307

(D.C. No. CR-99-886-SC)

(D. New Mexico)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **BALDOCK** , and **HARTZ** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34.(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Salvador Anchieta was convicted on one count of conspiracy to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 846. He appeals, contending that (1) the district court

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

erred by failing to declare a mistrial because of the admission into evidence of unconstitutionally seized binoculars, and (2) his counsel provided ineffective assistance of counsel by failing to file a motion to suppress prior to trial. We affirm.

Background

The morning of May 25, 1999, starting at about 1:15 a.m., Border Patrol Agent Richard Martinez conducted surveillance from his vehicle parked off of Hachita Road. The road, which was often used to transport illegal aliens and drugs, intersects Interstate Highway 10 about 40 miles west of Deming, New Mexico. Martinez parked at mile marker 15, five miles south of Interstate 10 and about a fifteen-minute drive from a smelter in Playas to the south.

Martinez did not see any vehicles on the road until approximately 4:00 a.m., when he observed three sets of truck headlights traveling together southbound. About a half hour later he noticed three sets of headlights traveling northbound. He stopped the first truck to determine whether it was carrying illegal aliens or narcotics. The truck was driven by Frank Salas. The second truck passed by while Martinez was occupied with Salas. After discovering marijuana in the truck, Martinez arrested Salas and placed him in the back of his patrol unit. (The weight of the marijuana was later determined to be 330 pounds.)

About this time the third set of headlights approached. The truck did not

-2-

arrive as quickly as Martinez would have expected based on the spacing of the trucks when he first observed them traveling northbound. When Martinez attempted to stop the truck by waving his flashlight, the truck almost ran him over. Martinez pursued the truck in his patrol unit and stopped it. The truck was driven by Defendant. Noting that it was not quite 5:00 a.m., Martinez asked Defendant what he was doing at such an early hour. Defendant replied that he was a construction worker looking for work. When asked on two separate occasions, Defendant denied knowing Salas. Martinez asked Defendant if he could search his truck. Defendant consented, but Martinez did not find anything illegal. Defendant was allowed to leave. Later that day, approximately 330 pounds of marijuana was found near mile marker 13 on Hachita Road.

At trial Salas testified that he and Defendant had been working together at D & G Construction in Lordsburg, New Mexico, and had been friends for several years. On May 24 Defendant asked him whether he wanted to split $1,000. He would need to drive to Hachita Road the following morning, stop around mile marker 8, and then wait while people threw "stuff" in the back of his truck. The next morning events went as planned. Defendant stopped at mile marker 10 while Salas continued on to mile marker 8, where his truck was loaded. Salas stated that after he was arrested, he initially had not implicated Defendant but then decided to tell the truth. He said he had lied because he was frightened.

David Baeza testified that Defendant and Salas had worked for him at D & G for six to eight months. He was aware that Defendant and Salas had known each other even before working for him.

Border Patrol Agent Robert Booth testified that he had been stationed in the vicinity of the Playas smelter in the early morning of May 25. There were no other vehicles in the vicinity of the smelter from 4:00 a.m. until the time he was radioed by Martinez for assistance. Once he arrived at the scene, Booth observed Defendant and Salas signaling and mouthing messages to each other.

Senior Customs Special Agent James Long testified about his interview of Defendant at the Deming Customs office the afternoon of May 25. Defendant told Long that he had been stopped by Agent Martinez while coming back from applying for a job at the smelter in Playas. Long responded that he thought it was too early to be applying for a job. Defendant then said that he had gone to the gate of the plant but security had turned him away and told him to come back later. When Long said that he would check with security, Defendant changed his story and claimed that he had not made it to the smelter and had decided to turn around before he got there because he lacked vehicle insurance.

Customs Agent John Czapko testified that Defendant's truck had been searched on May 25 after Defendant's arrest. A pair of binoculars was found on the bench seat. The binoculars were admitted into evidence. Czapko further

testified, however, that (1) Defendant had made a statement that the binoculars did not work and (2) Salas had never indicated that Defendant had been acting as a lookout or scout. During cross-examination, Czapko disclosed that Defendant's truck had been seized without a warrant. Defense counsel moved to suppress the binoculars. The district court granted the motion to suppress and agreed to give a curative instruction. At the request of defense counsel, the instruction was given with the other instructions after the close of evidence. Agent Czapko's testimony was the only reference to the binoculars during the trial.

Defendant testified at trial that he had traveled to the smelter in Playas looking for work on the afternoon of May 24. Not finding anyone to help him that afternoon, he left his home in Deming at approximately 4:00 a.m. the next morning to travel to Playas again. He stated that it takes about an hour and a half to travel from Deming to Playas. After traveling on Hachita Road about half-way to the smelter, he decided to turn around because his truck was having problems. On cross-examination he conceded that in his interview with Agent Long, he likely had blamed his lack of vehicle insurance in addition to the vehicle trouble as the reason for returning home. Defendant had recently been cited for lack of insurance while driving another vehicle.

Motion for Mistrial

We review a trial court's denial of a motion for mistrial for abuse of discretion, *see United States v. Linn*, 31 F.3d 987, 993 (10th Cir. 1994), largely because the trial court is in a better position than we are to judge the effect that incompetent evidence might have upon the jury, *see Maestas v. United States*, 341 F.2d 493, 496 (10th Cir. 1965). Further, error in the admission of evidence "may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it . . . [unless the] character of the testimony is such that it will create so strong an impression on the minds of the jurors that they will be unable to disregard it in their consideration of the case, although admonished to do so." *Id*.

We find no abuse of discretion here. The evidence against Defendant was compelling. Salas directly implicated Defendant, Agent Martinez observed him traveling in the same convoy as Salas, and there was simply no credible reason for Defendant to be where he was at that time unless he was involved with Salas. Defendant's attempted explanations only dug his hole deeper. His denial of knowing Salas showed consciousness of guilt, and his account of why he was on Hachita Road was so incredible as to imply that there must have been a guilty reason.

Moreover, the introduction of the binoculars could not have created so strong an impression on the minds of the jurors that they would have been unable to disregard it. First, the binoculars were only mentioned by one witness. Also, the prosecutor did not refer to the binoculars in his opening statement. Finally, the trial court gave the following jury instruction: "Mention has been made of a pair of binoculars. You are to disregard any mention of any binoculars. They are not relevant to any portion of this case and should play no role in your deliberations." As stated in *United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir. 1992), courts must "presume jurors will remain true to their oath and conscientiously follow the trial court's instructions."

Ineffective Assistance of Counsel

Defendant claims that he received ineffective assistance of counsel in violation of the Sixth Amendment because counsel failed to move to suppress the binoculars prior to trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), sets forth the following test for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

When evaluating ineffective assistance claims, reviewing courts need not determine whether counsel's performance was defective before evaluating the prejudice prong. *See id.* at 697.

To establish prejudice Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Our analysis of Defendant's mistrial claim disposes of the issue. In light of the compelling evidence at trial, the brief mention of the binoculars, and the curative instruction, it is clear that there was no prejudice.

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge