F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**MAR 17 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ASHLEY LONZA WILLIAMS, III, a/k/a
LON WILLIAMS,

     Defendant-Appellant.

No. 02-8088
(D.C. No. 01-CR-79-01-D)
(Wyoming)

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

FRANCES J. LaCROIX,

     Defendant-Appellant.

No. 02-8106
(D.C. No. 01-CR-79-02-D)
(Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **LUCERO**, Circuit Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On July 18, 2001, Ashley Lonza Williams, III ("Williams"), and Frances J. LaCroix ("LaCroix") were jointly charged in a one count indictment with conspiracy from January, 2000, to October 26, 2000, with each other and with Ariel Devon Williams ("Ariel") and Justine Barbara Williams ("Justine"), as well as with others, to willfully and knowingly possess with an intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). In a joint jury trial, both Williams and LaCroix were convicted and in their verdict the jury made a specific finding that the drug quantity was 500 grams or more of methamphetamine. Thereafter the defendants were duly sentenced. Both appeal.

At trial, each defendant was represented by his or her own attorney. The two appeals were separately briefed, although the government, by leave of court, was allowed to file one brief in response to the two opening briefs of the defendants. There were no reply briefs. We elect to consider both appeals in this order and judgment.

Ariel and Justine are daughter and mother, respectively, and each had a history of using and distributing drugs. Williams is no relation to Ariel and Justine. In the time frame of the present case, Ariel lived in San Diego, California, and Justine lived in Riverton, Wyoming. Ariel, for an extended period of time, lived in a residence in San Diego owned by LaCroix. Williams, who was LaCroix's brother, at the same time occupied a room in that residence. The government's theory of the case was that over an

extended period of time Ariel acquired methamphetamine from Williams, and others, in California, and shipped it to Justine in Riverton, via FedEx and UPS, where Justine sold it to others, and Justine would then send the proceeds of the sales back to Ariel. Ariel and Justine were arrested first. They entered into a plea agreement with the government wherein they pled guilty to certain drug charges in a different indictment, and also agreed to testify against LaCroix and Williams in the present case. Williams was sentenced to 240 months imprisonment and LaCroix was sentenced to 80 months imprisonment.

WILLIAMS

As stated, Williams was charged with conspiring to possess and distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and a jury found him guilty of the crime charged. Prior to trial, the government advised the court and counsel that, pursuant to 21 U.S.C. § 851(a)(1), it would seek to subject Williams to the enhanced penalty provided by 21 U.S.C. § 841(b)(1)(A) because of his 1992 California drug felony conviction. In a hearing concerning the presentence report, the district court determined that Williams' base offense level was 32, and his criminal history IV. Under the United States Sentencing Guidelines his sentence was set at 168 to 210 months imprisonment. The base offense level of 32 was based, in part, on the finding by the jury that more than 500 grams of methamphetamine was involved in the conspiracy. In this regard, Williams suggests, that the amount of methamphetamine involved was less than 500 grams, therefor, his base offense level should have been 26, not 32, which with a

criminal history category of IV would fix his imprisonment at 92 to 115 months. However, at sentencing the district court determined that, under 21 U.S.C. § 841(b)(1)(A)(viii), the defendant was subject to a mandatory minimum sentence of 20 years because he had a "prior conviction for a felony drug offense [which had] become final." Thus the district court did <u>not</u> sentence defendant under the Guidelines, as such, but, under 21 U.S.C. § 841(b)(1)(A), imposed the statutory mandatory minimum sentence. *See* U.S.S.G. § 5G1.1(b) (stating that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.") This is obvious since the maximum term of imprisonment under the Guidelines was 210 months, and the court sentenced Williams to 240 months. The validity of Williams' prior felony conviction was not challenged by either Williams or his attorney in the district court or here.

We find no error in Williams' sentencing. The jury found defendant guilty of conspiring to possess and distribute more than 500 grams of methamphetamine. Defendant's motion for judgment of acquittal for lack of evidence to show that more than 500 grams of methamphetamine was involved in the conspiracy was denied and, as we understand it, is not challenged on appeal. Rather, defendant seems to argue that the district court, in sentencing, erred in failing to make its own determination that the amount involved was more than 500 grams. However, in this connection, it would appear that the district court did find at Williams' sentencing hearing that at least 1137 grams of

- 4 -

methamphetamine was involved in this conspiracy. All of this, however, in our view, misses the point. The defendant was not sentenced pursuant to the Guidelines, but under 21 U.S.C. § 841(b)(1)(A)(viii), which mandated a minimum sentence of 20 years imprisonment, which was the sentence imposed. Accordingly, we reject Williams' request that we remand to the district court "with instructions to impose sentence according to the guideline base offense level for a drug quantity of less than 500 grams of methamphetamine."

## LaCROIX

LaCroix's first argument is that there is insufficient evidence to convict her of conspiring with either Ariel or Williams to possess 500 grams of methamphetamine with an intent to distribute. The thrust of her argument is that, although there may be sufficient evidence that she so conspired with Justine in Riverton via various and sundry telephone calls between the two concerning the sale of methamphetamine by LaCroix to Justine, there is insufficient evidence to show that she conspired with the other named co-conspirators, i.e., Ariel and Williams. We disagree.

In *United States v. Edwards,* 69 F.3d 419, 430 (10th Cir. 1995) we set forth the essential elements of a conspiracy charge as follows:

> In order to prove Chaplin was guilty of conspiracy with his codefendants, the government was required to prove: "'(1) agreement with another person to violate the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged coconspirators.'" "To establish that

[Chaplin] agreed to participate in the conspiracy, the [g]overnment's evidence must show a unity of purpose or a common design and understanding with coconspirators to accomplish one or more of the objects of the conspiracy." (Citations omitted.)

Our study of the record convinces us that there was ample evidence, as LaCroix concedes, that she conspired with Justine. Further, there is other evidence tending to show that LaCroix did conspire with Williams. The conspiracy, as indicated, involved the transportation of methamphetamine to Riverton, Wyoming, as well as distribution in San Diego. Ariel and Justine purchased methamphetamine from LaCroix and Williams for transport to Wyoming. LaCroix allowed Williams to use her home to distribute methamphetamine to Ariel, Justine and others.

In *United States v. Lopez,* 100 F.3d 113, 118 (10th Cir. 1996) we spoke as follows:

The government need not establish that Lopez knew the identities of all participants, or the precise nature of their participation. Rather, it must show, as it did in this case, an "ongoing course of conduct between Defendants in order to achieve a common goal or purpose . . . to profit from the illicit distribution of cocaine."

In the instant case, unlike *Lopez*, LaCroix knew the identities of all participants. It was her home where Ariel and Williams lived and from which methamphetamine was sent to Justine in Riverton. The totality of the evidence shows that there was an "ongoing course of conduct between Defendants in order to achieve a common goal or purpose . . . to profit from the illicit distribution of . . ." methamphetamine.

LaCroix next argues that her trial should have been separate from Williams'.

- 6 -

Prior to trial, LaCroix filed a motion for a severance of her trial from that of Williams. The motion was denied, and on appeal she claims that such was reversible error. Under the circumstances, we disagree. We review a denial of a motion for severance under an abuse of discretion standard, with the defendant having the burden of showing actual prejudice.

Neither LaCroix nor Williams testified at trial. However, LaCroix claims that, if her trial had been severed from Williams', she would have called Williams as her own witness, and that he would have given testimony that she was not involved in the conspiracy between Williams, Ariel and Justine. Whether Williams would have consented to testify we, of course, do not know, nor was there a proffer as to just what Williams could testify to which would exculpate LaCroix. We think that this case falls under the general rule that when two or more are named in the same indictment, participated in the same act or transaction, or in the same series of acts or transactions, severance is not required. *Zafiro v. United States,* 506 U.S. 534, 537 (1993); *United States v. Linn,* 31 F.3d 987, 992 (10th Cir. 1994). Further, any potential prejudice to LaCroix was minimized by the jury instruction providing that a defendant's involvement in a conspiracy "must be established by evidence as to his own conduct – what he himself or she herself said or did."

LaCroix's final argument is that the indictment should have been dismissed. In a post trial motion, LaCroix moved to dismiss the indictment under Fed. R. Crim. P. 6. As

grounds therefor LaCroix claimed that Ariel had "admittedly lied" to the Grand Jury when she testified, *inter alia,* that between January and March, 2000, she was buying methamphetamine from Williams when, in fact, she was buying it from one Shively, whom she desired to "protect."  The district court denied that motion and, on appeal, LaCroix argues that because Ariel, as well as Justine, lied to the Grand Jury, the indictment should have been dismissed. We disagree.

We think this issue comes well within the rationale of *United States v. Mechanik,* 475 U.S. 66 (1985).  There,  the defendant moved during trial to dismiss the indictment based on Fed. R. Crim. P. 6(d).  The jury found defendant guilty and on appeal the defendant continued to argue that the indictment should have been dismissed because of a violation of Rule 6(d).  The Supreme Court held that the fact that the defendant had been convicted by a petit jury rendered any failure to comply with Rule 6(d) harmless.  *Id.* at 70.

The purpose behind Rule 6 is to make certain that a person would not be forced to a trial where there is not "probable cause*." Id.*  In the instant case LaCroix, just as the defendant in *Mechanik*, was determined by the jury to be guilty of the crime charged in the indictment "beyond a reasonable doubt," which means there was probable cause. *Id.*

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge
